IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| STEVEN R. MOORE, et al., | ) | |
| | ) | Case No.  CV-06-215-E-BLW |
| Plaintiffs, | ) | |
| | ) | **MEMORANDUM DECISION** |
| v. | ) | **AND ORDER** |
| | ) | |
| FORREST R. PECK, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## INTRODUCTION

The Court has before it Defendants' Motion for Summary Judgment (Docket No. 16).  The Court heard oral argument on January 15, 2008, and now issues the following decision.

## BACKGROUND[1]

On June 1, 2004, Officer Peck of the Pocatello Police Department

---

[1]  Because the motion before the Court is Defendant's Motion for Summary Judgment, the following recitation construes the facts, and all reasonable inferences derived therefrom, in a light most favorable to the Plaintiffs.  The Court recognizes that the facts presented at trial may differ from these facts in important ways.  However, for purposes of Defendants' motion for summary judgment, the Court must consider the facts in the light most favorable to Plaintiffs.  A review of Defendants' briefing reveals that in making most of their arguments, Defendants construed the facts in a light more favorable to them.  This is counterproductive.  And, much of Defendants' brief was less than helpful to the Court in making its decision.  In the future, the Court cautions counsel to adhere to the well-known and common standard for summary judgment motions, as stated below.

**Memorandum Decision and Order – 1**

approached Markus Moore at his residence.  Markus, a 13-year old boy at the time, was home alone.  Officer Peck told Markus to tell his parents that their trailer was parked illegally on the street.

Markus' parents arrived home while Officer Peck was still nearby.  Officer Peck approached Mr. Moore and told him that he had to move the trailer or hitch it to his pickup.  Mr. Moore attempted to explain to Officer Peck why he could not park the trailer elsewhere and why it was parked on the street.  Nevertheless, Officer Peck ordered Mr. Moore to move the trailer or be cited.  Mr. Moore refused to move the trailer.

Officer Peck asked for Mr. Moore's identification, and Moore provided Peck with a driver's license.  Officer Peck then went to his patrol car to write the ticket. While Peck was at his patrol car, Markus informed his father that their dog, a large German Shepard, was loose in the back yard.  Moore told Markus to get the dog and put him in the kennel.  However, Markus was apparently interrupted on his way to get the dog, so Moore went to do it himself.

While Mr. Moore was attempting to place the dog in its kennel, Officer Peck ordered him to come to the front of the house.  Moore took hold of the dog's collar and went to the front of the house.  Mrs. Moore came out of the house at that point, grabbed onto the dog's collar, and explained that she would take the dog in the

**Memorandum Decision and Order – 2**

house.  Mr. Moore told her to let go of the dog because he didn't believe she could handle the dog.  Mr. Moore then put the dog in the back of the pickup, which apparently has a tethering device for the dog.

Markus jumped in the back of the pickup, tethered the dog, and wrapped his arms around the dog's neck.  Mrs. Moore continued to hold the dog's collar. Officer Peck approached the Moores and the vehicle to which the dog was tethered.  He told Mr. Moore to quiet down or he would arrest him for disturbing the peace.  When Mr. Moore didn't quiet down, Officer Peck told him he was under arrest.  Officer Peck told Moore to turn around and put his hands behind his back, but Moore disobeyed the command and moved toward the front door of the house.

Mr. Moore then moved to the sidewalk leading to his front door and stood with his back against the house.  At some point during this time frame, Officer McClure and his canine, Oky, arrived.  Officer Peck then grabbed Mr. Moore's arms and pulled him away from the house, and Officers Peck and McClure tackled Mr. Moore.  Moore was held face down with Officer Peck on his legs and backside, and his left arm twisted up behind his back.  Officer McClure was on Mr. Moore's back and Mr. Moore's right arm was pinned under and across his chest area.

**Memorandum Decision and Order – 3**

The officers cuffed Mr. Moore's left wrist, and ordered Mr. Moore to take his right arm out.  Mr. Moore responded that his arm was pinned under him.  One of the officers then said, "Get him, Oky."  The dog rushed in and bit into Mr. Moore's right forearm multiple times for up to 2-3 minutes.  The officers continued to tell Mr. Moore to put his right arm behind him, and Moore continued to tell the officers that it was pinned under him.  Mrs. Moore also yelled to the officers, explaining that Mr. Moore's arm was pinned.  The officers told her back off or she would be arrested.

While the dog was biting Mr. Moore, Officer Linn arrived on the scene.  He turned toward Mrs. Moore and Markus, who were still holding their dog in the back of the pickup, and pulled and pointed his firearm at them.  He ordered them to stay back and threatened to shoot their dog.

One of the officers finally remarked that maybe Mr. Moore's arm was pinned under him.  The other officer commented that it must be pinned because he wasn't moving it.  Officer Linn then removed Oky from Mr. Moore's arm.

Mr. Moore was subsequently transported to the hospital via ambulance.  The officers cited, but did not arrest Mr. Moore.  Ultimately, the state court withheld judgment in Mr. Moore's criminal case, and no judgment of conviction for any offense was entered.

**Memorandum Decision and Order – 4**

# ANALYSIS

## I.  Summary Judgment Standard of Review

One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources."  *Id*. at 327.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).

The evidence must be viewed in the light most favorable to the non-moving party, *id.* at 255, and the Court must not make credibility findings.  *Id.*  Direct testimony of the non-movant must be believed, however implausible.  *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999).  On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence.  *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a

genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Id. at 256-57.* The non-moving party must go beyond the pleadings and show "by her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex, 477 U.S. at 324.*

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1029 (9th Cir.2001) (quoting *Forsberg v. Pac. Northwest Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

## II.    Federal Claims

Defendants seek summary judgment on Plaintiffs' 42 U.S.C. § 1983 claims

on several grounds.  The Court will address each below.

### A.    Qualified Immunity

"Qualified immunity serves to shield government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 971 (9th Cir. 2005) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The Supreme Court has set forth the following two-pronged inquiry to resolve all qualified immunity claims:

> First, taken in the light most favorable to the party asserting the injury, do the facts alleged show the officers' conduct violated a constitutional right?  Second, if so, was that right clearly established?  The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  This inquiry is wholly objective and is undertaken in light of the specific factual circumstances of the case.

*Id.* (internal quotations and citations omitted).  Thus, a district court should "concentrate at the outset on the definition of the constitutional right and determine whether, on the facts alleged, a constitutional violation could be found." *Billington v. Smith*, 292 F.3d 1177, 1184 (9th Cir. 2002) (internal quotations and citations omitted).  If a constitutional violation can be found, the court then decides whether

**Memorandum Decision and Order – 7**

the violation was the source for clearly established law that was contravened in the circumstances of the case.  *Id.*

### 1.    Officers Peck, McClure and Linn

Plaintiffs assert that Officers Peck, McClure and Linn violated their rights by using excessive force.  "All claims that law enforcement officers have used excessive force – deadly or otherwise – in the course of an arrest must be analyzed under the Fourth Amendment and its 'reasonableness' standard."  *Smith v. City of Hemet*, 394 F.3d 689, 700 (9th Cir. 2005) (en banc).  Such analysis requires balancing the nature and quality of the intrusion on the alleged victim's liberty with the countervailing governmental interests at stake to determine whether the use of force was objectively reasonable under the circumstances.  *Id.* at 701.  The reasonableness inquiry asks whether the officers' actions were objectively reasonable in light of the facts and circumstances confronting them, not simply whether the force was necessary to accomplish a legitimate police objective.  *Id.*

Relevant factors in the reasonableness inquiry include "(1) the severity of the crime at issue,(2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight."  *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989). The query is not limited to these factors, however.  *Id.*

**Memorandum Decision and Order – 8**

### a.      Steven Moore's Claim Against the Officers.

Taken in the light most favorable to Plaintiffs, the nature and quality of the intrusion on Mr. Moore's liberty was substantial and profound.  While pinned to the ground, Oky, the canine officer, attacked Mr. Moore.  The officers then allowed Oky to bite Moore for 2-3 minutes.  The canine assault resulted in injuries to his arm, including ligament and tendon damage, which required surgery.

The Court next considers the Government's countervailing interests under the *Graham* criteria.  The most important element of the test is whether Mr. Moore posed an immediate threat to the safety of the officers or others.  *Id.*  Again, taking the facts in the light most favorable to Plaintiffs, there is no basis for believing that Mr. Moore posed any immediate threat to anyone's safety.  He had no weapons, and he was in plain view of the officers at the time of the arrest.  Although he initially refused to comply with Officer Peck's orders, he was quickly subdued by the officers.

The second element of the *Graham* criteria concerns the severity of the crime at issue.  Mr. Moore's initial crime was a parking violation.  Officer Peck then attempted to arrest Mr. Moore for disturbing the peace.  These crimes are near the bottom of any severity scale.

Finally, the third *Graham* factor is whether Mr. Moore resisted arrest or

**Memorandum Decision and Order – 9**

attempted to evade arrest by flight.  Even under Plaintiffs' version of the facts, Mr.
Moore disobeyed Officer Peck's orders, and moved to the sidewalk in front of his
house.  However, Mr. Moore did not attempt to run from the officers or flee the
scene, and he did not attempt to physically resist arrest.  Mr. Moore refused to
place his right arm behind his back, but only because it was pinned underneath
him.

Considering the severity and extent of the force used, as opposed to the
fairly minimal countervailing interests of the officers, the Court finds that, on the
facts alleged, a constitutional violation can be found.  *See Billington*, 292 F.3d at
1184.  Ordering or allowing a police Canine to bite a suspect for 2-3 minutes under
the circumstances described above is excessive force.

The Court therefore turns to whether the violation was the source for clearly
established law that was contravened in the circumstances of the case.  *Id.*  As
explained above, in determining whether the right was clearly established, the
relevant inquiry "is whether it would be clear to a reasonable officer that his
conduct was unlawful in the situation he confronted.  This inquiry is wholly
objective and is undertaken in light of the specific factual circumstances of the
case."  *San Jose Charter of Hells Angels Motorcycle Club*, 402 F.3d at 971.

The Court finds that a reasonable officer would have considered the force

**Memorandum Decision and Order – 10**

used by the officers in this case excessive.[2]  Although it may be proper police procedure to use a canine to apprehend a suspect, a reasonable officer would not consider it proper procedure to order or allow a canine to bite the suspect's arm for 2-3 minutes while two officers were holding the suspect down with his arm pinned under him.  In fact, prior to this incident, the Ninth Circuit had determined, in the context of a claim of excessive force in the use of a canine, that "it was clearly established that excessive duration of the bite and improper encouragement of a continuation of the attack by officers could constitute excessive force that would be a constitutional violation."  *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998).  Accordingly, the Court will deny qualified immunity to Officers Peck, McClure and Linn with respect to Steven Moore's claim.

---

[2] In their brief, Plaintiffs raised the question of whether to apply the deadly force or non-deadly force test to this case based on the Ninth Circuit's recent decision in *Smith v. City of Hemet*, 394 F.3d 689 (9th Cir. 2005).  In *Smith v. City of Hemet*, 394 F.3d 689 (9th Cir. 2005) the Ninth Circuit re-defined deadly force to comport with that of the vast majority of the other circuits.  The Ninth Circuit's new definition defines deadly force to mean force carrying with it a substantial risk of causing death or serious bodily harm.  *Smith*, 394 F.3d at 705.  Before *Smith*, the Ninth Circuit limited deadly force to that reasonably likely to kill.  Under the former definition, the Ninth Circuit had ruled that, generally, an officer ordering his dog to bite a suspect and permitting the dog to continue biting for up to one minute did not pose more than a remote possibility of death, and therefore was not considered deadly force.  *See Miller v. Clark County*, 340 F.3d 959, 962 (9th Cir. 2003).  The ultimate conclusion in *Miller* would likely be different now that the Ninth Circuit has overruled its former definition of deadly force.  Still, in *Smith*, the Ninth Circuit indicated that it need not determine whether the use of a police dog to subdue a suspect constitutes deadly force generally, or the circumstances under which such use might constitute such force.  The Court left that decision to the district court as it applied the new concept to the facts of the case.  *Smith*, 394 F.3d at 707.  This Court need not address the deadly force definition, however, because even under the non-deadly force standard, a reasonable officer would have considered the officers' actions in this case excessive.

**Memorandum Decision and Order – 11**

**b.** **Laura and Markus Moore's Claims Against the Officers**

Laura and Markus Moore claim that Officer Linn used excessive force by pointing his gun at them and ordering them to stay back.  Under these circumstances, the Court finds that the officer meets both prongs of the qualified immunity test.

Plaintiffs cite no authority, and the Court has located none, suggesting that an officer violates an individual's constitutional rights by ordering her to stay away from a crime scene.  Nothing in the facts, even taken in the light most favorable to Plaintiffs, suggests that Laura and Markus Moore were denied anything but access to the scene of the arrest.  A constitutional violation cannot be found under these circumstances.

Moreover, even if ordering Laura and Markus to stay away from the crime scene somehow violated their constitutional rights, the Court finds that it would not be clear to a reasonable officer that such conduct was unlawful.  It was not unreasonable for Officer Linn to draw his gun, point it in the direction of a 120-pound German Shepard being held in the back of the truck by Laura and Markus, and order them to stay back.  Accordingly, the Court determines that Officer Linn is entitled to qualified immunity with respect to the claims asserted against him by Laura and Markus Moore.

**Memorandum Decision and Order – 12**

### 2.    Chief Guthrie

Supervising officers are not held liable in a section 1983 claim based on a respondeat superior theory.  *See Graves v. City of Coeur D'Alene*, 339 F.3d 828, 848 (9th Cir. 2003)  Instead, supervising officers will be held liable under section 1983 only if they play an affirmative part in the alleged deprivation of constitutional rights.  *Id.*  Because it is rare that a supervisor will be personally involved in the same way as individual officers on the scene, to be held liable, a supervising officer must "set in motion a series of acts by others . . . , which he knew or reasonably should have known, would cause others to inflict the constitutional injury."  *Id.* (internal citations and quotations omitted); *see also Larez v. City of Los Angeles*, 946 F.2d 630, 645 (9th Cir. 1991).  "Supervisory liability is imposed against a supervisory official in his individual capacity for [1] his own culpable action or inaction in the training, supervision, or control of his subordinates, [2] for his acquiescence in the constitutional deprivations of which the complaint is made, or [3] for conduct that showed a reckless or callous indifference to the rights of others."  *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (internal citations and quotations omitted).

In this case, as explained above, the alleged constitutional injury occurred when the three officers ordered or allowed Oky to bite Mr. Moore for 2-3 minutes.

The first question, then, is whether there is evidence that Chief Guthrie set in motion a series of acts by others, which he knew or reasonably should have known, would cause Oky to bite Mr. Moore for 2-3 minutes. If so, the next question is whether Chief Guthrie's conduct was objectively reasonable.

Plaintiffs suggest that Chief Guthrie set in motion a series of acts by others when he authorized improper handler training for Oky. Specifically, Plaintiffs suggest that it was improper to train Oky to attack a suspect, without either warning to the suspect or command from the handler, whenever the dog perceived a threat to an officer. Through the affidavit of Rick Wiley, a police service dog master trainer, Defendants acknowledge that Oky was trained to apprehend a suspect by biting the suspect's arm if the dog's handler was attacked during a search of the suspect. (Wiley Aff., ¶ 3).

The issue of whether Chief Guthrie set in motion improper training of Oky received very little attention by the parties in their briefs. Therefore, at this point questions of fact remain as to how Oky was actually trained, as well as the degree of Chief Guthrie's knowledge of and role in that training. Moreover, questions of fact remain as to whether the officers ordered Oky to attack Mr. Moore or whether he attacked without command, and what exactly transpired between the officers and Mr. Moore while on the ground. Still, there is sufficient evidence, when

**Memorandum Decision and Order – 14**

construed in the light most favorable to Plaintiffs, to conclude that Chief Guthrie set in motion a series of acts by others, which he knew or reasonably should have known, would cause Oky to bite Mr. Moore.

However, even if a constitutional violation is found, the violation was not clearly established law at the time of this incident. *See Billington v. Smith*, 292 F.3d 1177, 1184 (9th Cir. 2002). The Court has been unable to find any case suggesting it was clearly established, at the time of incident here, that an individual's constitutional rights would be violated by a policy of training a canine to attack without warning or command when it perceives a threat to its handler. *See Watkins*, 145 F.3d at 1087, 1094, n.2. (Chief of Police cannot be held liable for the police department's "bite and hold" canine policy because there was no clearly established law against such a policy at the time of the incident). Plaintiffs provided the Court with no case law suggesting otherwise. Accordingly, the Court will grant summary judgment in favor of Chief Guthrie on the basis of qualified immunity.

**Memorandum Decision and Order – 15**

### 3.    City of Pocatello

The Ninth Circuit has stated that "a failure to train police officers may serve as the basis for [municipal] liability under § 1983 where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Gibson v. County of Washoe*, 290 F.3d 1175, 1194 (9th Cir. 2002) (internal quotations and citations omitted).  Policies of omission regarding the supervision of employees, then, can be policies or customs that create municipal liability, but only if the omission reflects a deliberate or conscious choice to countenance the possibility of a constitutional violation. *Id.*

As with their claim against Chief Guthrie, Plaintiffs assert that the City of Pocatello is liable based on its policy to train canines to attack a suspect, without either warning to the suspect or command from the handler, whenever the dog perceived a threat to an officer.  Given the general acceptance of "bite and hold" policies, the Court finds that there is no evidence of a deliberate or conscious choice to countenance the possibility of a constitutional violation on the part of the City of Pocatello. *Id.*  Accordingly, the Court will grant summary judgment in favor of the City of Pocatello.

### B.    *Heck v. Humphrey*

The Ninth Circuit has interpreted *Heck v. Humphrey*, 512 U.S. 477 (1994) as

standing  for the proposition that "if a criminal conviction arising out of the same facts stands and is fundamentally inconsistent with the unlawful behavior for which section 1983 damages are sought, the 1983 action must be dismissed." *Smith*, 394 F.3d at 695. (internal quotation and citation omitted).  The relevant question is whether success in the subsequent § 1983 suit would "necessarily imply" or "demonstrate" the invalidity of the earlier conviction or sentence. *Id.* Under *Heck*, a plaintiff may bring a § 1983 action, however, if the use of excessive force occurred subsequent to the conduct on which his conviction was based. *Id.* at 698.  The focus is on the officers' conduct, not the plaintiff's conduct. *Id.*

In *Smith*, the court found that there were two different phases of the officers' conduct – an investigative phase and the phase where Smith repeatedly refused to cooperate and the officers arrested him for resisting and obstructing a police officer. *Id.*  Nothing in the record before the court in *Smith* informed the court of the factual basis for Smith's plea. *Id.*  The court therefore found that it was entirely possible that Smith pled guilty on the basis of his actions during the time the officers were conducting their lawful investigation – the first phase of the encounter, but the officers' unlawful conduct occurred during the second phase. The court therefore concluded that because the officers acted lawfully in issuing orders to Smith during the first phase, Smith's disobedience of those orders would

**Memorandum Decision and Order – 17**

not be immunized from prosecution by the officers' subsequent unlawful acts during the second phase. *Id.* at 698-99. Thus, Smith's lawsuit did not necessarily imply the invalidity of his conviction, and was not barred by *Heck*. *Id.* at 699.

Here, as in *Smith*, the Court cannot determine, based on the record before the Court, that success by Mr. Moore on his § 1983 claim would necessarily imply or demonstrate the invalidity of an earlier conviction. *Id.* at 695. Although Defendants assert, in both their briefs and statement of facts, that Mr. Moore pled guilty to resisting and obstructing arrest in violation of Idaho Code § 18-705, Defendants provided the Court with no documentation or other evidence supporting such an assertion. Moreover, Mr. Ingelstrom, who represented Mr. Moore in his criminal matter, filed an affidavit indicating that Mr. Moore did not plead guilty to resisting and obstructing arrest. (Ingelstrom Aff., ¶¶ 1-2). Mr. Ingelstrom further states that the court withheld judgment and no conviction was entered against Mr. Moore. Id.

Based on the record before the Court, the Court cannot find that a judgment in favor of Mr. Moore would necessarily imply the invalidity of a conviction or sentence against him. The Ninth Circuit has made clear that "a § 1983 action is not barred under *Heck* unless it is clear from the record that its successful prosecution would *necessarily* imply or demonstrate that the plaintiff's earlier conviction was

**Memorandum Decision and Order – 18**

invalid.". *Smith*, 394 F.3d at 699 (emphasis in original).  Thus, Plaintiffs' claims

are not precluded by *Heck*.

## III.    State Law Claims

Defendants assert that they are immune from Plaintiffs' state law claims

based Idaho Code §§ 25-2808, 6-610 and 6-904.  The Court will address each

argument below.

### A.    I.C. § 25-2808

Idaho Code § 25-2808 states as follows:

> Neither the state of Idaho, nor any city or county, nor any
> peace officer employed by any of them, shall be
> criminally liable under the provisions of section 25-2805,
> Idaho Code, or civilly liable in damages for injury
> committed by a dog when: (1) the dog has been trained to
> assist in law enforcement; and (2) the injury occurs while
> the dog is reasonably and carefully being used in the
> apprehension, arrest or location of a suspected offender
> or in maintaining or controlling the public order.

Plaintiffs' claims are not brought under I.C. § 25-2805, and this code section has

no application to this case.  Even if it did apply, a jury question remains as to

whether the canine was "reasonably and carefully being used."

### B.    I.C. § 6-610

Defendants argue that Plaintiffs' state law claims are precluded because

Plaintiffs failed to post the bond required by Idaho Code § 6-610.  In relevant part,

**Memorandum Decision and Order – 19**

Idaho Code § 6-610 states that before any civil action may be filed against any law

enforcement officer, when such action arises out of, or in the course of the

performance of his duty, the proposed plaintiff, as a condition precedent, shall file

a written undertaking with at least two sufficient sureties in an amount to be fixed

by the court.

     The Idaho Court of Appeals applied Idaho Code § 6-610 in *Greenwade v.*

*Idaho State Tax Commission*, 808 P.2d 420 (Idaho Ct. App. 1991).  In *Greenwade*,

the court specifically found as follows:

> There is an additional ground for affirming the dismissal
> of the claims against Sheriff Putman.  Idaho Code §
> 6-610 requires that the prospective plaintiff in a suit
> against a law enforcement officer file an undertaking for
> costs. In *Pigg v. Brockman*, 79 Idaho 233, 314 P.2d 609
> (1957), the Supreme Court held that this requirement is
> not jurisdictional and may be waived by the defendant;
> however, the Court also held that the statute is
> mandatory, so that where it is not complied with, the
> district court must dismiss the action when the
> appropriate objection is timely urged by the defendant.
> *Pigg*, at 238, 314 P.2d at 611. In this case, Sheriff
> Putman filed a motion to dismiss which included an
> objection to Greenwade's failure to post a bond. We
> conclude that this failure to post a bond provides an
> additional basis for affirming the dismissal of the claims
> against Sheriff Putman.

808 P.2d at 422.  Thus, under most circumstances, a plaintiff's failure to post the

bond required by Idaho Code § 6-610 precludes the plaintiff's state law claims.

**Memorandum Decision and Order – 20**

However, a court may waive costs, fees and security for indigents.  Pursuant to Idaho Code § 31-3220, a party may file an affidavit stating that he is indigent and unable to pay the costs, fees and security associated with his case.  Thereafter, the court can waive costs, fees and security if it finds, after informal inquiry, that the party is indigent.  See Idaho Code § 31-3220(2).

Plaintiffs in this matter neither posted a bond nor filed an affidavit stating that they are indigent.  However, the Court will give Plaintiffs the opportunity to file an affidavit showing indigence.  The affidavit must address all of the specific issues set forth in Idaho Code § 31-3220(3).  If Plaintiffs do not file the affidavit, or if the Court determines, after reviewing the affidavit, that Plaintiffs are not indigent, the Court will dismiss Plaintiffs' state law claims.[3]

---

[3] Plaintiffs may argue that they must be given an opportunity to post a bond if they are unable to establish indigency.  This argument may have some merit, since the statute, while requiring the posting of the bond as a condition precedent to filing the suit, also requires that the amount of the bond be established by the court.   This is an anomaly, since a judge is not assigned to a case until after it is filed.  The statute does not outline or prescribe a  procedure which would permit a judge to determine a bond amount in advance of the plaintiff's filing of a complaint.   In the absence of such a procedure it is difficult to see how a plaintiff could comply with the statute.  Moreover, even if the statute prescribed such a procedure, it may not be applicable in federal court proceedings.  Nevertheless, the Idaho case law suggests that dismissal is mandatory if the bond is not posted in advance of the filing of the complaint by a non-indigent plaintiff.   The Court will follow that procedure here until and unless it can be persuaded that the above-noted inconsistency excuses a failure to strictly comply with the statute.

**Memorandum Decision and Order – 21**

**C.     I.C. § 6-904(3)**

Finally, Defendants argue that Plaintiffs' state law claims should be dismissed because Defendants are immunized by Idaho Code § 6-904(3) for claims arising out of an alleged assault and battery and false imprisonment.  This statute states in relevant part that a governmental entity and its employees "while acting within the course and scope of their employment and without malice or criminal intent shall not be liable for any claim which . . . [a]rises out of assault, battery [or] false imprisonment . . . ."  Idaho Code § 6-904(3).  Although it is clear that Defendants were acting within the course and scope of their employment, a question of fact remains as to whether they acted "without malice or criminal intent."  Id.  Summary judgment pursuant to Idaho Code § 6-904(3) is therefore improper.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment (Docket No. 16) shall be, and the same is hereby, GRANTED in part and DENIED in part.  As explained in detail above, Plaintiff Steven Moore's claims against Officers Peck, McClure and Linn remain.  All of Laura and Markus Moore's claims are dismissed, as are Steven Moore's claims against Chief Guthrie and the City of Pocatello.

IT IS FURTHER ORDERED that Plaintiff Steven Moore shall have ten (10) days from the date this decision to file an affidavit showing indigence.  The Court will consider the affidavit and determine whether Mr. Moore is indigent pursuant to Idaho Code § 31-3220(3).  If the Court determines that he is not indigent, or if he fails to file the affidavit within the time allotted, the Court will dismiss his state law claims.

IT IS FURTHER ORDERED that the Clerk of the Court shall set this case for a scheduling conference for the purpose of setting a trial date.

DATED:  **February 19, 2008**



Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision and Order – 23**